UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANFORD C. STODDARD,                    No. 07-11173

       Plaintiff,                    District Judge Victoria A. Roberts

v.                                      Magistrate Judge R. Steven Whalen

UNITED STATES OF AMERICA,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

On March 19, 2007, Plaintiff Stanford C. Stoddard filed a taxpayer's complaint for a refund, pursuant to 26 U.S.C. § 6532(a) (referencing 26 U.S.C. § 7422(a)). Before the Court are Plaintiff's motion for summary judgment [Docket #24] and Defendant's Motion for Summary Judgment [Docket #27], which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend as follows:

(1) That Plaintiff's motion for summary judgment [Docket #24] be DENIED.

(2) That Defendant's motion for summary judgment [Docket #27] be GRANTED IN PART AND DENIED IN PART. Specifically, regarding the assessments for tax years 1980, 1995, 1998, 1999 and 2000, the motion should be GRANTED, and those claims DISMISSED. Regarding the assessments for the 1984 tax year, the Defendant's motion should be DENIED.

## I.   FACTS

When Plaintiff filed his 2001 federal income tax return, he declared an overpayment of $411,480.00. *Plaintiff's Motion*, Exhibit D. However, by correspondence dated December 2, 2002, the Internal Revenue Service ("IRS") applied $177,384.23 of that overpayment to taxes it claimed were owed for other tax periods. *Id.*, Exhibit E. Specifically, the IRS applied these funds as follows:

| Tax Period | Amount Applied |
| --- | --- |
| 1980 | $72,989.14 |
| 1984 | $50,451.24 |
| 1995 | $19,317.62 |
| 1998 | $   326.78 |
| 1999 | $18,215.33 |
| 2000 | $16,084.12 |
| TOTAL | $177,384.23 |

Through both his accountant and his attorney, Plaintiff filed a claim for a refund with the IRS. Following discussion and correspondence between the parties, the IRS disallowed the Plaintiff's claim by correspondence dated November 8, 2006. *Id.*, Exhibit B. On March 13, 2007, following further review "on an informal basis," the IRS reaffirmed its denial of the claim. Plaintiff timely filed the present action on March 19, 2007.

Both parties have filed motions for summary judgment. Plaintiff clarified at oral argument that he seeks summary judgment only as to the portion of his 2001 overpayment that was applied to the 1980 tax period. Additional facts peculiar to each year in question will be discussed in the Analysis section.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the

movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   ANALYSIS

#### A.   1980 Tax Year

The IRS applied $72,989.14 out of Plaintiff's 2001 overpayment to satisfy an assessment regarding the 1980 tax year. The assessment, made in 1996, is documented in Defendant's Exhibit 11, filed with Defendant's Response and Cross-Motion [Docket #27]. IRS Form 2859, part of that exhibit, contains a "Remarks" section that describes the basis of the assessment as "Re: Butler Properties 38-612, Barrister Flow-through." This is further set forth in form 4549-CG, part of the same exhibit (pg. IRS 2055), describing an adjustment to income based on a flow-through from the 1983 tax year:

> "Butler Properties / 38-6124762 Flow thru *Barrister Equipment Associates Series 140/11-2646864* / Investment tax credit / investment tax credit carryback." (Emphasis added).

With regard to the present case, the critical item is Barrister Equipment Series 140. Barrister is a partnership item, subject to the Tax Equity and Fiscal Responsibility Act

("TEFRA"), 26 U.S.C. §§ 6221-6234.[1]  Barrister Equipment Series 140 was a party to a United States Tax Court partnership-level proceeding in 1989.  *See* Defendant's Exhibit #15. The Defendant states that Plaintiff Stoddard had an interest in the Barrister partnership through Butler Properties, another partnership:

> "The Plaintiff's original income tax return for 1980 indicates that he had a partnership interest in an entity called 'Butler Properties. (Plaintiff's Ex. I, Plaintiff's ECF page 25 of 45.)  An IRS document related to the 1996 assessments for the 1980 tax year indicates that the additional tax related to 'Butler Properties' and 'Flow Thru Barrister Equipment Series 140' and an investment tax credit or investment tax credit carry-back related to those two entities. (See Cole Decl. Exh. 11, (IRS pages 2055 and 2049.)  The United States has also located an IRS microfiche page showing that Stanford Stoddard is one of two partners in the entity with the taxpayer identification number identified for Butler Properties on the above-described exhibit. (See Cole Decl. Ex. 16.)  Thus, the evidence demonstrates that Mr. Stoddard had links, through one of his own partnerships, to Barrister Equipment Series 140." *Defendant's Brief in Opposition* [Docket #27], p.9.

Plaintiff's Exhibit OO, attached to his supplemental brief [Docket #38], is a deficiency letter from the IRS to the Plaintiff, dated May 1, 1996, along with documentation explaining the reasons for the determination of a tax deficiency for 1980. This exhibit further supports the finding that the claimed deficiency was related to the Butler Properties/Barrister Equipment Series 140 partnership item.  It contains the same portion of Form 2859 noted above, as well as an explanation on page 4 Schedule A of a

---

[1] A "partnership item" is "any item required to be taken into account for the partnership's taxable year...[that] is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3).  *See Chimblo v. CIR*, 177 F.3d 119, 121 (2nd Cir 1999).

Butler Properties adjustment indicating a carry-back from 1983:

> "An examination of this partnership [Butler Properties] indicates that your distributive share of ordinary income (loss) should be corrected as shown above. A detailed report which sets forth the adjustments to the partnership income has been furnished to the tax matters partner. Please contact such individual or organization for additional information."

Page 3 of Schedule A (Plaintiff's Exhibit OO, attached to Plaintiff' Supplemental Brief, Docket #38) also reflects "1983 adjustments attributable to tax motivated transactions" that include a 1983 carry-back investment credit related to Butler Properties.

Thus, Plaintiff's argument that the source of the 1980 carry-back claim is unclear, or that 1983 was not a "Barrister Properties year," lacks plausibility.

Plaintiff argues that the 1980 assessment is barred by the statute of limitations set forth in either 26 U.S.C. § 6501(a) or § 6502(1)(a). However, a statute of limitations challenge by an individual partner is barred by TEFRA, 26 U.S.C. § 6221. In *Kaplan v. United States*, 133 F.3d 469 (7th Cir. 1998), the plaintiffs in a tax refund action brought a statute of limitations challenge regarding an alleged partnership item. The Seventh Circuit held:

> "This argument cannot succeed because the underlying substantive claim concerns the propriety of the adjustments to the partnership's 1983 tax return. If the Kaplans were to succeed in their claim, it would affect the tax liability of all of MCDA II's partners. This is precisely the type of challenge prohibited by TEFRA in light of Congress's decision that such suits are better addressed in one fell swoop at the 'partnership level' than in countless suits by individual partners. Other courts share our view that this kind of statute of limitation challenge concerns a partnership item. *See Thomas v. United States,* 967 F.Supp. 505, 506 (N.D.Ga.1997); *Crowell v. Commissioner of Internal Revenue,* 102 T.C. 683, 693, 1994 WL 151303 (1994); *Slovacek v. United States,* 36 Fed.Cl. 250, 254-56 (1996); *Anderson*

*v. United States,* No. C-91-3523 MHP, 1993 WL 204605 (N.D.Cal. June 3, 1993), aff'd. without opinion, 50 F.3d 13 (9th Cir.1995)."

"It is well established that statute of limitations challenges are considered challenges to a partnership item." *Williams v. United States*, 165 F.3d 30, *3 (Table) (6th Cir. 1998); *see also Klein v. United States*, 86 F.Supp.2d 690 (E.D. Mich. 1999)(Roberts, J.) ("Applying *Kaplan* to the instant case, it is clear that this Court lacks jurisdiction to entertain Plaintiffs' claim for refund with respect to partnership items").

Likewise, this Court lacks jurisdiction, under TEFRA, to consider Plaintiff's arguments, including statute of limitations issues, regarding what the Defendant has clearly shown are partnership items relative to the 1980 assessment.

Furthermore, the 1980 assessment is not barred by a 1990 settlement agreement entered into by the Plaintiff and the IRS. That agreement, set forth an an IRS Form 870-AD, is appended to Plaintiff's motion as Exhibit J [Docket #24], and settles claims relating to tax years 1982 to 1986. It is a two-page form, with the second page containing language that specifically and unambiguously excludes partnership items from the scope of the agreement:[2]

> "If this offer is accepted, the case will not be opened by the Commissioner unless there was...a deficiency or overassessment resulting from adjustments made under Subchapters C and D of Chapter 63 *concerning the tax treatment of partnership and subchapter S items determined at the partnership and corporate level*." (Emphasis added).

---

[2] Plaintiff's argument that the printed language excluding partnership items was not properly incorporated into the agreement is without merit. It is clearly the second page, and thus part of Form 870-AD, not a separate, unrelated document.

Also, the Defendant has submitted as Exhibit 1 to the Supplemental Declaration of Thomas P. Cole [Docket #37] a portion of the closing memorandum from Plaintiff's 1990 settlement, which confirms that the Barrister Series 140 matter was not included in the agreement:

> "All adjustments necessary for the Barrister 136 settlement were assessed by the TEFRA Support Unit on April 9, 1990.
>
> "*The Barrister 140 and the Dayton Securities tax shelters have not yet been settled*. Therefore, the case will be forwarded to the TEFRA Support Unit which is controlling the Butler tax shelter after processing of the other issues reflected in this Appeals Report." (Emphasis added).

Thus, even though the agreement covers 1983 (the year related to the 1980 carry-back), the carry-back itself was a partnership item regarding Butler Properties/Barrister Equipment Series 140. As a partnership item, it is excepted from the 1990 agreement.

Finally, Plaintiff entered into another agreement with the IRS in 1989, an agreement that did address and settle partnership items related to tax years 1983 and 1984. *See* Exhibit NN, appended to Plaintiff's Supplemental Brief [Docket #38] and Exhibit 1 to Supplemental Declaration of Thomas Cole [Docket #37]. However, that agreement very specifically relates to Barrister Equipment Series 136, *not* Barrister Equipment Series 140, the partnership at issue in this case. Therefore, Plaintiff can find no refuge in the 1989 agreement.

Plaintiff has presented no evidence on which a reasonable fact-finder could conclude that the assessment for 1980 was related to anything other than a partnership

item. Accordingly, this Court is without jurisdiction to consider Plaintiff's refund action with respect to that year, *Kaplan v. United States, supra*. Defendant's motion for summary judgment as to 1980 should be granted, and Plaintiff's motion denied.

### B. 1984 Tax Year

The 1996 assessments regarding Plaintiff's 1984 tax year is more problematic. Defendant's Exhibit 12 [appended to Docket #27] is the Examination Closing Record for the tax year ending December 31, 1984. This is the only documentation that relates to 1984. Unlike Exhibit 11, relating to the 1980 tax year, Exhibit 12 contains no reference to Barrister Equipment or flow-throughs from Butler Properties. Indeed, comparing the 1980 assessment documents, Defendant concedes that "[w]e have been unable to locate a comparable document for the 1984 year." *Defendant's Opposition to Plaintiff's Motion for Summary Judgment*, p. 17 [Docket #27]. Rather, Defendant argues that Plaintiff's situation in 1984 was "likely" the same as the plaintiffs in *Chimblo v. United States*, *supra*, a case that involved the Barrister Equipment partnership:

> "Chimblo indicates that the Barrister Equipment Series Tax Court proceedings related to the 1983 and 1984 tax years. Chimblo, 177 F.3d at 121-22. At the conclusion of that case, the IRS proposed deficiencies against the Chimblos, who were partners in another Barrister Equipment Series partnership, for 1984 and 1980, because the Chimblos had carried back losses from the 1983 or 1984 years back to the 1980 year. Chimblo, 177 F.3d at 122. *The same thing likely happened with Mr. Stoddard*: following the conclusion of the Barrister Tax Court Equipment Series Tax Court proceeding, adjustments were made to the Stoddard liability, which included the making of a new assessment for the 1984 year and the disallowance of a carryback for the 1980 year. Indeed, Mr. Stoddard's argument that the 1990 settlement agreement covered the 1980 year (even though this year is not on the settlement agreement) *may very well be*

-9-

premised on the carrying back of a loss for the 1983 year (which may have been allowed by the 1990 settlement) to the 1980 year." (Emphasis added).

In a summary judgment motion, it is incumbent on the moving party to initially demonstrate the absence of a genuine dispute over material facts. *Celotex, supra*, 477 U.S. at 422-23; *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("As the moving party, respondent had the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party"); *Moldowan v. City of Warren*, _F.3d_, 2009 WL 2176640, *12 (6th Cir. 2009)("At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact").[3]

Exhibit 12, which contains absolutely no reference to partnership items, does not satisfy the Defendant's burden under Rule 56. Nor does Defendant's speculation that Plaintiff's situation in 1984 is "likely" similar to the plaintiffs in *Chimbo*, or that the settlement agreement "may very well be" premised on the carry-back of a 1984 partnership item. Moreover, Plaintiff has submitted as Exhibit AA, appended to his motion for summary judgment [Docket #24], a transcript of his IRS records pertaining to tax year 1984, including certificates of assessments and payments. These records indicate

---

[3] If a moving party fails to meet this initial burden, the non-moving party has no duty to present countervailing evidence. Indeed, a court abuses its discretion if it grants a summary judgment motion where the moving party has not met its burden. *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 726 (6th Cir. 2000).

that additional tax, along with interest and penalties, was assessed in 1996, but (consistent with Defendant's admission that there are no documents substantiating its claim that the assessments related to partnership items), there is no reference to Butler Properties or Barrister Equipment Series 140.

As discussed above, there is ample support for the Defendant's claim that the adjustments for 1980 involved partnership items, and therefore this Court is without jurisdiction under TEFRA.  By contrast, there is little support, other than inferences derived from the *Chimbo* case, that the assessments for 1984 were related to Barrister, Butler, or any other partnership. If they were not, there is no TEFRA bar to this suit, and summary judgment for the Defendant is inappropriate.

### C.    1995 and 1998 to 2000 Tax Years

The assessments of penalties for tax years 1995, 1998, 1999 and 2000[4] were based on Plaintiff's failure to make sufficient estimated tax installment payments.  *See* 26 U.S.C. § 6654, which provides for the assessment of penalties where there is an underpayment of estimated taxes.  Plaintiff seeks abatement of the penalties owing to the complex nature of his income and his inability to obtain timely and accurate reporting

---

[4] The penalty for under payment of estimated taxes is deemed an "addition to tax" under 26 U.S.C. § 6654(a)).

from his income sources, which number 155 items.

In April, 2002, Plaintiff filed an Offer in Compromise ("OIC") regarding liability for tax years 1995, 1998, 1999 and 2000.[5] On December 2, 2002, while the OIC was pending, the IRS applied a portion of Plaintiff's overpayment for the 2001 tax year to the assessments for 1995 and 1998 to 2000. On April 14, 2003, the IRS denied the OIC, stating:

> "We are sorry but your offer is rejected because the taxes, penalties and interest are held to be legally due and an amount larger than the offer has been collected. We do not have authority to accept an offer in these circumstances."

*Plaintiff's Motion*, Exhibit M [Docket #24].

Plaintiff argues that the Defendant's seizure and crediting of his 2001 overpayment to the assessments in question while an OIC was pending was improper. The Defendant relies on then-temporary regulation 26 C.F.R. § 301.7122-1T(j), which provides, "Notwithstanding the evaluation and processing of an offer to compromise, the IRS may, in accordance with section 6402, credit any overpayments made by the taxpayer against a liability that is the subject of an offer to compromise and may offset such overpayments against other liabilities owed by the taxpayer to the extent authorized by section 6402."[6] Plaintiff counters that the regulation is in conflict with 26 U.S.C. § 6331(k)(1)(A), which

---

[5] The OIC also included tax years 1980 and 1984.

[6] This temporary regulation was in effect at the time Plaintiff's OIC was submitted. It has since been replaced by a permanent regulation, 26 C.F.R. § 301-7122-1(g)(5), which contains the same language.

-12-

provides:

> **(1) Offer-in-compromise pending.**--No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax--
>
> **(A)** during the period that an offer-in-compromise by such person under section 7122 of such unpaid tax is pending with the Secretary.

Given this statutory bar on levies made during the pendency of an offer in compromise, Plaintiff argues that "the regulation is clearly beyond the legitimate rule making power of the IRS." *Plaintiff's Supplemental Brief*, pp. 3-4 [Docket #38]. Plaintiff's argument is based on an incomplete reading of the underlying statute, 26 U.S.C. § 6331(k).

In determining whether an agency exceeds its rule-making power, the first question is "whether Congress has directly spoken to the precise question at issue." *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778 (1984). In analyzing whether Congress has directly spoken, the court "employ[s] 'the traditional tools of statutory construction.'" *Timex V.I. Inc. v. United States*, 157 F.3d 879, 882 (Fed.Cir. 1998) (*citing Chevron*, 467 U.S. at 843, n.9). These tools include the statute's plain text, structure, and legislative history. Because the regulation derives from the IRS's power to collect taxes through offsets, as set forth in 26 U.S.C. § 6402, it is important to understand what § 6331(k) says about offsets. In this regard, § 6331(k)(3) states:

> **(3) Certain rules to apply.**--Rules similar to the rules of--

**(A)** *paragraphs (3) and (4) of subsection (i)*, and

**(B)** except in the case of paragraph (2)(C), paragraph (5) of subsection (i), shall apply for purposes of this subsection. (Emphasis added).

The referenced Subsection (i) generally precludes levies during the pendency of a federal court action to recover a refund. However, § (i)(3)(B)(i) sets forth an exception to this rule:

**(B) Certain levies.**--This subsection shall not apply to--

**(i)** any levy to carry out an offset under section 6402.

Again, the plain language of a statute is a controlling factor. Because Paragraph (3)(B)(i) is explicitly incorporated into § 6331(k), it is clear that subparagraph (k) permits an offset even though an OIC is pending, and that the corresponding regulation is a statutorily permissible exercise of the IRS's rule-making power.[7]

On a visceral level, the idea that the IRS can swoop in and seize an overpayment

---

[7] In his *Consolidated Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment* [Docket #30], Plaintiff asks for damages pursuant to 26 U.S.C. §§ 7433(a) and (b), based on the application of the offset while an OIC was pending. Apart from the fact that this claim was not included in the complaint, it fails on its merits. Section 7433(a) provides a cause of action where "in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title...." In this case, there was compliance with, not disregard of the applicable statutes and regulations. Moreover, no individual "officer or employee" of the IRS has been named as a Defendant.

while an OIC is pending, and then deny the OIC because the assessment has been paid in full, seems offensive.  Whether or not it is equivalent to "grand larceny," as the Plaintiff suggests, the average fourth-grader would no doubt perceive it as unfair, at least in the colloquial sense.  Nevertheless, Congress has spoken, and under the existing statutory and regulatory scheme, the IRS lawfully applied the Plaintiff's 2001 overpayment to the assessments in question.  Plaintiff's remedy lies in this action for a refund.[8]  The underlying question in this case is whether the Plaintiff does or does not owe the money, not whether the IRS played dirty pool in the way it collected the penalty.

In a court challenge to an addition to tax for underpayment of estimated tax, the IRS has the initial burden of production.  26 U.S.C. § 7491(c); *Rinn v. C.I.R.*, 2004 WL 2397144, *3 (U.S.Tax Ct., 2004).  In this case, the Plaintiff does not dispute that the estimated tax was underpayed, and indeed, the Defendant has provided sufficient documentation to show an underpayment.  Defendant has therefore satisfied its burden of production.  The burden therefore shifts to the Plaintiff to show that the additions to tax were invalid. *Simpson v. C.I.R.*, 23 Fed.Appx. 425, *4 (6th Cir. 2001), citing *Ledbetter v. Commissioner*, 837, F.2d 708, 711 (5th Cir. 1988).

---

[8] Plaintiff suggests that the overpayment should be returned to him and the OIC should be reinstated and reconsidered by the Commission. However, there would be two additional impediments to ordering the return of the seized overpayment prior to this Court's substantive finding that Plaintiff did not owe the additions to tax.  First, the Plaintiff's request is in the nature of injunctive relief, which is proscribed by 26 U.S.C. § 7421(a).  Secondly, a plaintiff cannot maintain a refund suit unless the tax has been paid. *See Flora v. United States,* 362 U.S. 145, 146-63, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Martin v. Commissioner,* 753 F.2d 1358, 1360 (6th Cir.1985).

Plaintiff argues that the penalty/additions to tax should be abated under 26 U.S.C. § 6654(e)(3)(A), providing for no addition for underpayment of estimated tax where the failure is due to "unusual circumstances" and addition would be "against equity and good conscience." He contends that the nature of his income is extremely complex and that it is difficult for him to obtain information necessary to accurately estimate his tax liability. Plaintiff's accountant, Roger D. Steensma, has prepared an affidavit, appended to Plaintiff's Supplemental Brief [Docket #38] as Exhibit QQ, stating, at ¶ 31:

> "Mr. Stoddard's income tax returns for each year in question presents, in my experience, the type of 'unusual circumstances' warranting abatement of the § 6654 penalty due to (a) the amount of income he receives, (b) the numerous sources of income and businesses in which he is a third party investor, and (c) that he is without input or control in providing timely financial reporting for nearly all of these sources of income and businesses."

It is important to note that while § 6654(e)(3)(A) provides for abatement in the case of "unusual circumstances," it does not permit abatement for "reasonable cause." Plaintiff concedes that a "reasonable cause" defense is unavailable to him. *See Plaintiff's Consolidated Reply*, p. 17 [Docket #30]. In this regard, Plaintiff cites *Carlson v. United States*, 126 F.3d 915, 921 (7th Cir. 1997), which in turn quotes a Treasury Regulation, 26 C.F.R. § 301.6651-1(c)(1), defining "reasonable cause" as follows:

> "Failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship..if he paid on the due date."

While the Plaintiff does not claim (and the evidence does not show) that he was either unable to pay the estimated tax or that to do so would cause him undue hardship, his claim of "unusual circumstances," based on the complexity and numerosity of his sources of income and the difficulty in obtaining timely information from those sources, sounds very much like a claim that he "exercised ordinary business care and prudence," but was still unable to make the payments.  In that sense, his claim of "unusual circumstances" is a claim of "reasonable cause" in disguise.

The only authority Plaintiff cites to support his claim of unusual circumstances is an unpublished bankruptcy court decision from Louisiana, *In re Sims*, 1991 WL 322994 (Bkrtcy. E.D. La., 1991). The court described Sims' situation as follows:

> "During the years at issue, the Debtor was an investor in a number of business ventures and partnerships. The tax reporting for those business entities was handled by individuals besides the Debtor or his accountant. As reflected in the testimony at trial, on many occasions neither the Debtor nor his accountant could obtain tax reporting information to timely file a tax return. The Debtor filed extensions for some years, but much of the needed information was not available by the extended filing due dates." *Id.* at *1.

Finding these to be "unusual circumstances" under § 6654(e)(3)(A), the court held:

> "The facts and evidence presented above in this case indicate that neither the Debtor nor his accountant had any control, power, or ability to secure the proper documents and financial information needed to prepare the Debtor's income tax returns for the year in question. This Court holds that such inability to obtain needed information constitutes an unusual circumstance and the imposition of an additional tax under 26 U.S.C. § 6654 would be against equity and good conscience." *Id.* at *2

Apart from the fact that *Sims* has no precedential value, I disagree with its

conclusion regarding what constitutes "unusual circumstances." First, as noted above, to allow the complexity of a taxpayer's income and the difficulty of obtaining information to constitute "unusual circumstances" would be to effectively import a "reasonable cause" standard into §6654(e)(3)(A). "[N]either reasonable cause nor good faith is a valid defense against the [§ 6654] penalty." *Sawyer v. United States*, 426 F.Supp. 572, 574 (D.C.La. 1977). The Plaintiff's difficulty in obtaining information is no more unusual than what might be experienced by any other taxpayer who has investment income from multiple sources. While it could be said that the Plaintiff's underpayment of his estimated tax was due to *extenuating* circumstances, that is insufficient under § 6654(e)(3)(A). *See Estate of Ruben v. CIR*, 33 T.C. 1071, 1072 (U.S. Tax Court, 1960) ("This section has no provision relating to reasonable cause and lack of willful neglect. It is mandatory and extenuating circumstances are irrelevant"); *Gurtman v. United States*, 1973 WL 574, *4 (D.N.J. 1973)(unpublished) ("[T]here can be no doubt that Congress explicitly defined all exceptions to the operation of the addition to tax provision of Section 6654(a), and that no exception based upon reasonable cause or other mitigating or extenuating circumstances may be fairly implied.").

More generally, to accept the *Sims* view of what constitutes "unusual circumstances" would create a double standard, whereby taxpayers who derive an extremely large income from a complex network of investments and outside sources are given an advantage not enjoyed by those operating under more modest circumstances.

For these reasons, Defendant is entitled to summary judgment as to the assessments for 1995 and 1998 to 2000.

### IV.   CONCLUSION

I recommend as follows:

(1) That Plaintiff's motion for summary judgment [Docket #24] be DENIED.

(2) That Defendant's motion for summary judgment [Docket #27] be GRANTED IN PART AND DENIED IN PART. Specifically, regarding the assessments for tax years 1980, 1995, 1998, 1999 and 2000, the motion should be GRANTED, and those claims DISMISSED.  Regarding the assessments for the 1984 tax year, the Defendant's motion should be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate

Judge.

      Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                       s/R. Steven Whalen
                                       UNITED STATES MAGISTRATE JUDGE

Dated:  August 5, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 5, 2009.

                                       s/Susan Jefferson
                                       Case Manager