UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

STANDFORD C. STODDARD,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

Case No. 07-11173

Hon. Victoria A. Roberts

_____

## ORDER

**I.    INTRODUCTION**

    This matter is before the Court on cross Motions for Summary Judgment filed by the parties. The Motions were referred to Magistrate Steven Whalen, pursuant to 28 U.S.C. §636(b)(1)(B), for a Report and Recommendation ("R&R"). On August 5, 2009, the Magistrate Judge issued an R&R recommending that the Court: (1) deny Plaintiff's Motion, (2) grant Defendant's Motion for the tax years 1980, 1995, and 1998 through 2000, and (3) deny Defendant's Motion for the 1984 tax year. Plaintiff objects to the Magistrate's conclusions regarding the 1980, 1995, and 1998 through 2000 tax years. Plaintiff accepts the balance of the R&R pertaining to 1984. For the reasons stated, the Court **ADOPTS** the Magistrate's R&R with modifications.

**II.    BACKGROUND**

    This is a taxpayer's refund action. At issue is whether the Internal Revenue Service ("IRS") erroneously applied a 2001 overpayment of $177,384.23 to taxes,

penalties and interest owed for several prior years dating back to 1980.  Plaintiff Stanford Stoddard contends the assessments were erroneous or otherwise barred by the statute of limitations.

Plaintiff was a partner in various business entities, including the Barrister Equipment Associates Series at issue in this case.  Plaintiff timely filed IRS Forms 1040 for 1980 through 1986; on each return he listed income from various partnerships.

On December 29, 1987, Plaintiff filed Amended IRS Forms 1040s for the same years; he says he made additional payments for all years except 1983, for which he obtained a refund.

On March 4, 1988, Plaintiff again filed amended IRS Forms 1040 for the 1980 and 1983 tax years, both showing refunds.

In May 1989, Plaintiff and his wife entered into a settlement agreement with the IRS regarding partnership items for Barrister Equipment Associates 136.

In May 1990, Plaintiff and his wife filed an Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment on IRS Form 870-AD for tax years 1982 through 1986.  The IRS accepted the offer on July 17, 1990.  As set forth in the agreement, there was: (a) no change in the tax returns filed for 1985 or 1986; (b) liability of $4,072 for the 1982 year; (c) liability of $3,836 for the 1984 tax year; and (d) a reduction in liability of $73,121.00 for the 1984 tax year.

On April 4, 1996, the IRS made an assessment of $22,756.00 in additional taxes and $103,556.73 in interest for the 1980 tax year on IRS Form 3552.  The IRS contends the additional assessment resulted from the recapture of an investment tax credit carryback related to Barrister Equipment Associates 140.

On April 23, 2002, Plaintiff filed an Offer in Compromise ("OIC") on Form 656, due to "doubt as to liability" for the tax years 1980, 1984, 1995, 1998, 1999 and 2000. The Form 656 contained a standard provision that the IRS would keep any refund due to the taxpayer because of overpayment for tax periods extending through the calendar year that the IRS accepts the offer; it states that this condition does not apply if the offer is based on doubt as to liability. On July 22, 2002, the IRS notified Plaintiff that it was reviewing the OIC.

On October 15, 2002, Plaintiff filed his 2001 federal income tax return on IRS Form 1040. He declared an overpayment of $411,480.00 and designated the entire overpayment to be applied to his 2002 estimated federal income tax payments.

Instead, in a December 2, 2002 correspondence, the IRS applied $177,384.23 of that overpayment to taxes it claimed were owed for six previous tax periods:

| Tax Period | Amount Applied |
|---|---|
| 1980 | $ 72,989.14 |
| 1984 | $ 50,451.24 |
| 1995 | $ 19,317.62 |
| 1998 | $     326.78 |
| 1999 | $ 18,215.33 |
| 2000 | $ 16,084.12 |
| TOTAL | $177,384.23 |

Plaintiff contends the assessments were erroneous.

On December 31, 2002 and January 23, 2003, Plaintiff filed administrative refund

3

claims with the IRS, seeking refund of the seized overpayment and reversal of penalties and interest assessed for underpayment of tax.

On April 14, 2003, the IRS denied Plaintiff's OIC.

On April 15, 2004, Plaintiff filed amended income tax returns for the 1980 and 1984 tax years, both of which claimed a refund of the portion of the 2001 overpayment applied to those years. On the same date, Plaintiff filed formal refund claims for the tax years 1995, 1998, 1999 and 2000.

The IRS denied the refund claims by correspondence dated November 8, 2006. On March 13, 2007, following an informal review, the IRS reaffirmed its denial of the refund claims.

Plaintiff timely filed this action on March 19, 2007. During the course of discovery, the IRS notified Plaintiff that some tax files pertaining to him were lost or destroyed. Both parties filed motions for summary judgment. Plaintiff seeks summary judgment with respect to the portion of the 2001 overpayment that was applied to the 1980 tax period.

This Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(1).

### III.   STANDARD OF REVIEW

This Court reviews *de novo* those portions of an R&R to which specific objections are made. *28 U.S.C. § 636(b)(1)*; *Fed. R. Civ. P. 72(b)*. See also *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088 (6th Cir. 1992) (noting that a district court conducts de novo review of magistrate judge's rulings on dispositive motions); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement

4

that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). The Court may accept, reject or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Redding*, 241 F.3d at 532.

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968); see also *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797,

800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

IV.   **ARGUMENTS AND ANALYSIS**

    **A.  Burden of Proof**

In general, a presumption of correctness attaches to a tax assessment if the assessment is supported by a minimal evidentiary or factual foundation. *United States v. Stonehill*, 702 F.2d 1288 (9th Cir. 1983). However, an assessment is "naked" and "beyond saving" when "the records supporting an assessment are excluded from evidence, . . . or are nonexistent, . . . , so that the basis upon which an assessment is calculated is beyond the knowledge of the court." *United States v. Schroeder*, 900 F.2d 1144, 1149 (7th Cir. 1990).

Although courts recognize that the loss of the administrative file may mean that an assessment lacks a factual foundation, loss of the file does not necessarily create a "naked assessment." *Cook v. United States*, 46 Fed Cl. 110, 114 (Ct. Fed Cl. 2000). When the government produces evidence to support the assessment in lieu of the lost file, demonstrating that the assessment has a "foundation in fact," then the presumption of correctness applies. *Id.* at 115. The burden of proof then shifts to the taxpayer to show that the assessment is arbitrary, erroneous or excessive. *Helvering v. Taylor*, 293 U.S. 507, 79 L. Ed. 623, 55 S. Ct. 287 (1935). If the taxpayer rebuts the presumption, it disappears. *Stonehill* at 1294. The burden of proving the deficiency then reverts to the

government. *Id.*

### B. Objection 1: 1980 Assessment

The Magistrate said the Court lacked jurisdiction under the Tax Equity and Fiscal Responsibility Act of 1982, P.L. 97-248 ("TEFRA") to consider Plaintiff's arguments, because Plaintiff presented no evidence on which a reasonable fact finder could conclude that the 1980 assessment was for anything other than a partnership item.

Plaintiff argues the Magistrate erred in presuming the 1980 assessment was a partnership assessment controlled by TEFRA and not barred by the statute of limitations in 26 U.S.C. § 6501(a). He contends there is a question of fact whether: (1) the IRS adjusted his income for 1983 based on the judgment in the Barrister partnership level proceeding; (2) any such adjustment reduced a carryback claimed on his 1980 amended income tax return; (3) the IRS made an additional assessment of tax for 1980, because of a disallowed carryback; and (4) the statute of limitations barred the additional assessment for 1980.

The Government's position is that: (1) Plaintiff was a partner in Butler Properties, which in turn was a partner in Barrister Equipment Series 140; (2) the tax matters partner of Barrister Equipment Series 140 initiated a Tax Court proceeding in 1989 which addressed proposed TEFRA adjustments to Barrister's income for the 1983 and 1984 tax years; (3) the Tax Court proceeding was resolved in 1995 through the entry of a stipulated judgment; (4) pursuant to that judgment, the IRS made adjustments to Plaintiff's income for the 1983 tax year; (5) the adjustments to Plaintiff's income for 1983, once made, reduced a carryback credit which he previously claimed on his 1980 amended tax return; (6) in 1996, because of the disallowed carryback for 1980, the IRS

made an additional assessment of tax for the 1980 tax year; and (7) the assessment (related to a 1983 TEFRA adjustment) was not barred by the statute of limitations.

Under TEFRA, a statute of limitations defense relates to a partnership item that must be raised at the partnership level. *Kaplan v. United States*, 133 F.3d469, 473 (7th Cir. 1998). A "partnership item" is "any item required to be taken into account for the partnership's taxable year . . . [that] is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). Changes in the tax liabilities of individual partners which result from the correct treatment of partnership items determined at the partnership level proceeding are defined under TEFRA as "computational adjustments." IRC § 6231(a)(6).

TEFRA contemplates the Commissioner's determination at the individual partner level of "affected items," which are defined as "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5). Penalties assessed against a partner based on the partner's tax treatment of partnership items on his individual return are examples of affected items. See *Olson v. United States*, 172 F.3d 1311, 1999 U.S. App. LEXIS 1751, at *19-20 (Fed. Cir. 1999); *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744-46 (1987).

The Government admits that its administrative files for the 1980 tax year no longer exist or cannot be located. To meet its burden of production, the Government offered the following evidence: (1) a Certificate of Assessments and Payments for the 1980 tax year [See Defendant's Ex. 3], which lists all of the assessments, penalties, interests, abatements, credits and refunds against Plaintiff and his deceased wife from June 17, 1981 through November 27, 2006; (2) Plaintiff's original 1980 income tax

return [See Plaintiff's Ex. I, p. 25], which indicates that he had a partnership interest in an entity called "Butler Properties; (3) a Prompt Assessment Billing Assembly on Form 3552 [See Cole Dec. Ex. 11, p. 2048]; (4) a Request for Quick or Prompt Assessment on Form 2859 [See Cole Dec. Ex. 11, p. ], which indicates that additional tax was assessed related to "Butler Properties" and "Barrister Flow-through"; (5) an Income Tax Examination Changes Form 4549A-CG [See Cole Dec. Ex. 11, p. ], which indicates that the tax changes related to "Barrister Equipment Series 140" and an investment tax credit and an investment tax credit carryback; and (6) a microfiche page showing that Plaintiff is one of two partners in the entity with the taxpayer identification number identified for Butler Properties [See Cole Dec. Ex. 16].

This evidence is sufficient to establish the Government's *prima facie* case. Accordingly, the presumption of correctness attaches to the assessment. See *Coleman v. United States*, 704 F.2d 326, 329 (6th Cir. 1983) (holding that assessment was naked, but noting that "secondhand" records or "any demonstrably reasonable methodology of estimation" may be used to establish presumption of correctness).

In rebuttal, Plaintiff offered the following to meet his burden to show the assessment is erroneous: (1) the 1990 settlement agreement (Form 870-AD) with the IRS [See Plaintiff's Ex. J]; (2) the OIC that was pending at the time of the seizure of the overpayment [See Plaintiff's Ex. K]; (3) IRS Document Identification Forms regarding destroyed documents [See Plaintiff's Ex. GG]; (4) the first page of the amended 1980 tax return, dated December 30, 1987, and prepared by Daniel Maher, along with check payable to the Internal Revenue Service in the amount of $37,380.00 [See Plaintiff's Ex. G]; (5) the first page of the amended 1980 tax return, dated March 4, 1988  [See

Plaintiff's Ex. PP]; (6) a Notice of Deficiency dated May 1, 1996 regarding tax year 1980, along with a handwritten explanation on Form 5260 and an Income Tax Examination Changes form, showing a deficiency of $22,756.00 related to the Barrister 140 partnership [See Plaintiff's Ex. OO]; and (7) the affidavit of Daniel Maher, Plaintiff's former accountant [See Doc. 40].  Close review of the evidence supports Plaintiff's claim that material issues of fact exist which preclude summary judgment.

The IRS Document Identification Forms indicates that the IRS' 1980 and 1983 tax files were destroyed.  The Government relies on the 1980 Certificate of Assessments and Payments to support the assessment. *See* Exh. 3.  It shows assessments of tax and interest of $22,576.00 and $103,556.73, respectively, on April 4, 1996.  However, it shows no reversal of an investment tax credit or a carryback for either 1980 or 1983.  The Government concedes the document omits the amended return filed by Plaintiff in late 1987 or early 1988, though Plaintiff provides a copy of the first page of the return.  This further calls into question the accuracy of the certificate.  Similarly, the 1983 Certificate of Assessments and Payments does not reflect reversal of an investment tax credit (which would affect the 1980 tax year). *See* Exh. BB.  The Government has not offered a notice of deficiency or a Barrister partnership audit assessment for the 1983 tax year (from which the 1980 carryback credit arose).

Notably, the "Notice of Deficiency" for the 1980 tax year shows a deficiency of $0, and penalties of $1,138.00 and $5,689.00, totaling $6,827.00. *See* Exh OO.  Plaintiff contends that only $5,589.00 was assessed, and that he never received a notice of deficiency or assessment for any remaining amounts the IRS claims to be due.  The "Income Tax Examination Changes" form reflects a $22,756.00 deficiency which

10

the IRS says Plaintiff owes for 1980. *See* Exh. 11. But, it shows no adjustment to taxable income or investment tax credit recapture for 1980, thus the source of the deficiency is not clear. Another inconsistency exists in the Request for Quick or Prompt Assessment, which reflects taxes and interest of $124,622.66 owed for 1980 and a statute of limitations date of May 16, 1996. *Id.*

The affidavit of Plaintiff's former accountant, Daniel Maher, indicates that Plaintiff's 1986 amended income tax return contained a large loss on line 4, which arose from the payment of professional fees incurred by Plaintiff in the course of a government investigation of Michigan National Bank, a bank in which Plaintiff and other family members had a controlling interest. Mr. Maher says the large deduction for 1986 was carried back three years to 1983, resulting in excess tax credits for 1983, which were in turn carried back three more years to 1980, and that none of the changes in the amended income tax returns involved any investment in, or audit of, the Barrister Equipment Associates tax shelters.

The Government argues that Mr. Maher is not competent to rebut its evidence because he has no knowledge regarding the Barrister partnership proceeding. This Court disagrees. Mr. Maher's statements rebut the Government's claim that the carryback recapture from 1983 to 1980 was a Barrister partnership item. They create a question of fact regarding the source of the deficiency. Coupled with the above evidence, there is sufficient disagreement for presentation to a jury.

If, in fact, the 1980 assessment resulted from the judgment in the Barrister partnership level proceeding, it is a partnership assessment controlled by TEFRA and Plaintiff is barred from raising the statute of limitations defense in this partner-level,

11

affected items proceeding. This question of fact must be resolved before the Court can determine which statute of limitations, if any, applies.

### B. Objection 2: 1990 Settlement Agreement

Plaintiff argues the Magistrate erred in finding that the 1990 settlement agreement between Plaintiff and the IRS did not include Barrister Equipment Series 140 and all of its issues. He contends there is a question of fact regarding whether the second page of the IRS Form 870-AD, which includes printed language excluding partnership items, was properly incorporated in the agreement.

The Magistrate decided that the 1980 assessment was not barred by the 1990 settlement agreement because the second page of the IRS Form 870-AD contained specific language that excluded partnership items from the scope of the agreement. The Magistrate rejected Plaintiff's claims about the second page, finding that it was clearly part of the Form 870-AD agreement, not a separate, unrelated document. The Magistrate said that even though the agreement covered 1983 (the year related to the 1980 carryback), the carryback itself was a partnership item regarding Butler Properties/Barrister Equipment Series 140, and was excluded from the agreement.

The Form 870-AD covers the tax years 1982 to 1986 and has a handwritten notation which states "5 years closed at the appellate level plus 3 year carryback for investment tax credit (covers 1980)." *See* Exhibit J.  It is unclear by whom and when this notation was written, and whether this was part of the agreement. Exhibit J also includes "Letter 913" from the IRS accepting Plaintiff's "Form 870-AD" and an attachment which includes a list of terms and conditions relative to "Form 870-AD."

Plaintiff's affidavit states that he never saw the second page of the IRS Form

870-AD. *See* Doc. 39. Yet, Plaintiff submitted it as an exhibit and argues that those terms and conditions, found on the back of "Form 870-AD," confirm that the 1990 settlement is final and binding. *See* Doc. 24, p. 10. Plaintiff seeks to have it both ways. He essentially asks the Court to find that the terms and conditions were not part of the original agreement, but to consider them to find that the 1990 settlement included the 1980 tax year. The Court finds that the Magistrate did not err in rejecting this argument.

### C. Objection 3: Seizure of 2001 Overpayment

Plaintiff argues that the seizure of his 2001 overpayment, while he had a pending OIC, was a violation of the tax code and regulations. He contends that 26 C.F.R. § 301.7122-1T(j), the temporary regulation in place at the time he submitted his OIC, is in conflict with 26 U.S.C. § 6331(k)(1)(A) and is beyond the legitimate rulemaking power of the IRS. Plaintiff says the Magistrate overlooked the plain language of the OIC in finding that the IRS did not waive any statutory right to seize the 2001 overpayment. He says the Court has jurisdiction to apply equity and impose a remedy similar to recoupment, and award him a credit for future income taxes that become due and owing.

The Magistrate held that the regulation was a statutorily permissible exercise of the IRS's rule-making power because it derived from the IRS's power to collect taxes through offsets, as set forth in 26 U.S.C. § 6402. The Magistrate says 26 U.S.C. § 6331(i)(3)(B)(i), incorporated into 26 U.S.C. § 6331(k), permits an offset during the pendency of an OIC. The Government agrees with this reasoning.

26 U.S.C. § 6331(k) contains a statutory bar on levies during the pendency of an offer in compromise:

13

> (1) Offer in compromise pending
> No levy may be made under subsection (a) on the property or rights to property of any person with respect to any unpaid tax—
>
> (A) during the period that an offer-in-compromise by such person under section 7122 of such unpaid tax is pending with the Secretary;

26 U.S.C. § 6331(k)(1)(A). However, 26 U.S.C. § 6331(k)(3) says that rules similar to 26 U.S.C. § 6331(i)(3) and (4) shall apply to subsection 6331(k).

26 U.S.C. § 6331(i) generally prohibits levies during the pendency of an action in federal trial court for recovery of a refund. However, § 6331(i)(3) contains two exceptions; one applies here:

> (B) Certain levies
>
> This subsection shall not apply to—
>
> (i) any levy to carry out an offset under section 6402;

26 U.S.C. § 6331(i)(3)(B)(i).

26 U.S.C. § 6402 grants broad authority to the IRS to credit overpayments to any tax liability, which may reasonably include interest and penalties. *Smith v. United States*, 4 Fed. Appx. 759 (Fed. Cir. 2001). Thus, notwithstanding the perceived unfairness, the statute permits such a seizure while an offer in compromise is pending.

Additionally, under the current regulation 26 C.F.R. § 301.7122-1(g)(5), which contains language identical to the temporary regulation, the submission of an OIC does not automatically operate to stay collection of a tax liability. This supports the view that the IRS may, but is not required to, stay the collection of tax while an OIC is pending.

Plaintiff admits that this language is discretionary, but contends the IRS either contracted away or waived its right to seize his refund by the terms of the OIC. He

14

relies on Item 8(g) of the OIC:

> As additional consideration beyond the amount of my/our offer, the IRS will keep any refund, including interest, due to me/us because of overpayment of any tax or other liability, for tax periods extending through the calendar year that the IRS accepts the offer. I/We may not designate an overpayment ordinarily subject to refund, to which the IRS is entitled, to be applied to estimated tax payments for the following year. This condition does not apply if the offer is based on Doubt as to Liability.

See Exhibit K, p. 3. He also relies on a form, contained in the same exhibit, which includes a section regarding "Withholding Collection Activities":

> We will withhold collection activities while we consider your offer. We will not act to collect the tax liability:
>
> • While we investigate and evaluate your offer
> • For 30 days after we reject an offer
> • While you appeal an offer rejection

See Exhibit K, p. 5. It is unclear whether this form was part of the OIC, and based on the parties' submissions, the Court cannot conclude that it was. Additionally, page 1 of the OIC says that "signature(s) of taxpayer is required on last page of Form 656." Neither Plaintiff, nor the Government included a signature page with their exhibits. In its absence, the Court cannot conclude that the parties agreed to be bound by any specific terms and conditions, and that there was a waiver of the right to pursue collection. This objection lacks merit.

### D.  Objection 4: Assessment of Addition to Tax

Plaintiff argues that the Magistrate erred in finding that he was liable for 26 U.S.C. § 6654 additions to tax for underpayment of estimated taxes. He contends that the nature of his income is extremely complex and it is difficult for him to obtain information necessary to accurately estimate his tax liability. Thus, he says there is a

question of fact as to whether the additions to tax should be waived based on "unusual circumstances," pursuant to § 6654(e)(3)(A).

The Magistrate said that Plaintiff's claim of "unusual circumstances" is a claim of "reasonable cause" in disguise, and § 6654(e)(3)(A) does not permit abatement for reasonable cause. The Magistrate opined that Plaintiff's difficulty in obtaining information is no more unusual than what might be experienced by any other taxpayer with investment income from multiple sources.

26 U.S.C. § 6654 requires assessment of an addition to tax for an individual's underpayment of estimated tax payments. Section 6654(e)(3)(A) contains an exception:

> No addition to tax shall be imposed under subsection (a) with respect to any underpayment to the extent the Secretary determines that by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience.

26 U.S.C. § 6654(e)(3)(A).

Plaintiff offers the affidavit of his accountant, Roger Steensma, to support his claim of unusual circumstances. Steensma says that he has prepared Plaintiff's personal income tax returns since 1995 and that they present "one of a kind" issues that are unique in complexity and scope; he spends an unparelled number of hours preparing Plaintiff's income tax return. Steensma also says that for the years in which the § 6654 penalty was imposed, Plaintiff's failure to pay adequate estimated payments was largely due to untimely receipt of IRS Form 1099, IRS Schedule K-1 or other reports from the reporting sources.

Plaintiff says the R&R suggests he met the threshold required by the court in

*Carlson v. United States*, 126 F.3d 915 (7th Cir. 1997), that a showing of "reasonable cause" - as that phrase relates to penalties for which there is a reasonable cause exception - has to be made before a taxpayer could meet the "unusual circumstances" exception under § 6654(e)(3)(A).  There, because the taxpayer could not even meet the reasonable cause standard for waiver of other tax penalties, he could not demonstrate unusual circumstances sufficient to avoid the § 6654 addition to tax.

Plaintiff says he meets the reasonable cause standard and goes beyond by showing it was beyond his control to obtain the necessary information.  The Government counters that to the extent *Carlson* allows for a reasonable cause exception to the § 6654 addition to tax, the Seventh Circuit improperly grafted a reasonable cause exception not provided by Congress.  The Court agrees; the plain language of the statute does not contain a reasonable cause exception.

Plaintiff also cites *In re Sims*, 1991 WL 322994 (Bkrtcy. E.D. La, 1991) in support of his contention that his situation falls within the unusual circumstances language.  Similar to this Plaintiff, the debtor in *Sims* was an investor in a number of business ventures and partnerships.  The tax reporting for those entities was handled by individuals other than the debtor and his accountant, and many times they could not obtain information to timely file a tax return.  The IRS argued that the debtor was liable for additions to tax pursuant to § 6654.  The bankruptcy court held that such inability to obtain needed information constituted an unusual circumstance, such that the imposition of an additional tax would be against equity and good conscience.

Plaintiff notes that the *Sims* decision has been cited by the United States Tax Court without disparagement of its holding. See *Merriam v. Commissioner*, T.C. Memo

1995-432 (distinguishing *Sims* where the records needed to complete taxpayer's return were available to taxpayer, under taxpayer's control, and capable of being generated by taxpayer).

The Government, however, says that § 6654(e)(3)(A) applies only if the Secretary has made a determination that "by reason of casualty, disaster, or other unusual circumstances" it "would be against equity and good conscience" to impose the addition. Since no determination was made here, the Government suggests the absence of such a determination cannot be viewed by the Court, or to the extent that it can, must be reviewed on an abuse of discretion standard. It relies on *United States v. Williams*, 514 U.S. 527, 537 (1995) and *Mekulsia v. Commissioner*, 389 F.3d 601, 604 (6th Cir. 2004) for this proposition.

In *Williams*, the Court, in discussing why the plaintiff could not avail herself of § 6325(b)(3), noted that the remedy afforded by the statute and its implementing regulation was available only at the Government's discretion. *Id.* at 537.

In *Mekulsia*, the taxpayer challenged the Commissioner's denial of an interest abatement for payment deficiencies under § 6404. The court held the taxpayer must both identify a ministerial act that was required, and was not performed or was performed in an erroneous manner, and prove abuse of discretion. *Id.* at 604. The court did not reach the abuse of discretion question because it found all relevant acts were discretionary and not ministerial.

Here, the Government cites to no similar discretionary language in § 6654(e)(3)(A). This Court rejects the contention that the decision is not subject to judicial review.

The Government additionally says that Plaintiff's argument regarding his inability to make estimated payments is not credible, because § 6654(d)(1)(B)(ii) provides a safe harbor provision where taxpayers make estimated payments based on the prior year's tax figure.  That credibility determination is a question of fact for the jury.

## IV.     CONCLUSION

The Court **ADOPTS** the Magistrate's Report and Recommendation with the following modification:

A.  Defendant's Motion for Summary Judgment regarding the 1980, 1995, and 1998 through 2000 tax years is **DENIED** for the reasons stated.


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 30, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 30, 2009.

s/Carol A. Pinegar
Deputy Clerk

19